U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

DEC - 6 2012

TONY R. MOORE, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

UNITED STATES OF AMERICA

versus

MICHAEL D. CORBELL

CRIMINAL NO. 08-0075-01
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is Michael D. Corbell's ("Corbell") motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. See Record Document 63. Based on the following, Corbell's motion is **DENIED**.

### I. BACKGROUND

**A.   Factual Background.**

In 1999, Prakash Patel, B. S. Desai, and Denesh Desai ("Desai Group") contracted with Corbell Companies to do construction work on a hotel located in Halthom City, Texas. Corbell owned and operated Corbell Companies. In 2000, Corbell contacted the Desai Group to request $200,000 to complete the construction project on the hotel in Halthom City. After the Desai Group was unable to obtain additional financing, they issued a promissory note to Corbell for $200,000 secured by a Second Lien of Trust on another hotel located in Tyler, Texas. The note was to

be paid in 60 payment installments. See Record Document 74 at 3-4.

Sometime between January and May of 2001, Corbell requested an additional $50,000 to complete the construction on the hotel in Halthom City. On May 11, 2001, the Desai Group issued to Corbell a Renewal Real Estate Lien Note for $250,000 which incorporated the original note and was also secured with the same security as the original note. See id. at 4.

On May 23, 2001, Corbell sold his interest in the renewal note for $105,000 to Leonard Tennibaum ("Tennibaum"). To complete this sale, Corbell and Tennibaum executed a Note Purchase Agreement, Assignment of Note, and a Transfer of Lien. In the Assignment of Note, Corbell assigned his interests in both the original and renewal notes to Tennibaum. Part of the agreement was for Corbell to retain the rights to the first fourteen installment payments of the original and renewal notes. Tennibaum then issued a letter on June 25, 2001, to inform the Desai Group of his purchase and that payments should be made to him. See id.

In August of 2001, Tennibaum foreclosed on the renewal note for non-payment by the Desai Group. Tennibaum also purchased Corbell's remaining interests in the renewal note for $35,000 on September 13, 2001. An Assignment of Note was executed assigning all of Corbell's remaining interests in the notes to Tennibaum. Throughout all of these transactions between Tennibaum and Corbell, Tennibaum did not obtain possession of the original note. See id.

In the late fall of 2001, Corbell requested an increase in his company's line of credit loan with First Louisiana Bank in Shreveport ("FLB"). The increase in the line of credit was requested for the construction of a new storage warehouse facility on land already occupied by two other buildings. Initially, Corbell offered a first mortgage on the commercial property and a CD valued at $72,154 on the date of the pledge as collateral for the increase in the line of credit. Ron Boudreaux ("Boudreaux"), the president and CEO of FLB, notified Corbell that this collateral was insufficient. Corbell then offered fifty percent of a $200,000 second mortgage note (the original note identified above) in addition to the previous collateral, which brought the total collateral to $1,176,548. Corbell executed a note for $1,115,000 and signed a commercial pledge agreement pledging the second mortgage note as collateral stating that Corbell owned an interest in the $200,000 second mortgage note. Corbell did not, at that time, inform FLB that he had previously sold and assigned all of his interest in the $200,000 second mortgage note nor did he obtain permission from Tennibaum to pledge this note to FLB. See id. at 5.

In September of 2002, Corbell again requested an increase in his line of credit loan with FLB. Corbell indicated to FLB that he had signed leases totaling $11,350 per month and he needed additional funds to complete those spaces. FLB increased the line of credit from $1,115,000 to $1,248,000. This increase in the line of credit was secured with the same collateral as the previous line of credit. See Record

Document 55 at 11-12.

In January of 2003, an interest payment was due on this credit line in addition to two other loans that Corbell had at FLB. FLB cashed the CD and applied the proceeds ($77,727.77) toward the interest on the three loans and to cover overdraft charges that Corbell had incurred in other accounts he had with FLB. The seizure of the CD did not result in any principal reduction on the line of credit loan of $1,248,000. See id. at 13. Corbell began having financial problems in 2003 and could no longer meet his obligations with FLB. FLB foreclosed on the property and purchased it at a sheriff's sale for $971,000. See id. at 14-15.

FLB approached one of their other customers who owned warehouses and rental spaces to ask if they would take the property from the bank. FLB agreed to finance the entire purchase price and to also advance them an additional $100,000 to complete the project. See id. at 15. The sale price was $1,300,000. See id. at 16. FLB did not receive any money from the sale of the property. Instead the property was transferred to Industrial Drive Warehouse, LLC. The property was moved from FLB's "other real estate" to a loan in the amount of $1,300,000 in the name of Industrial Drive Warehouse. See id. at 39.

The Federal Deposition Insurance Corporation ("FDIC") conducted a general audit in July of 2006 and required that FLB obtain a new appraisal on the property. The appraisal came back at $1,005,200 which caused FLB to charge off $310,159.

See id. at 16-17. The FDIC returned in April of 2007 and FLB was told they could not carry the property at 100 percent of the appraised value, only at 80 percent of the appraised value. This information required FLB to further charge off an additional $205,260. See id. at 18. The series of reductions to the amount FLB could lend on the property resulted in a total loan amount of $800,000. See id. at 21.

**B.    Procedural Background.**

On July 23, 2009, a federal grand jury returned a superceding indictment against Corbell. He was charged in count one of the indictment with bank fraud in violation of 18 U.S.C. § 1344. Count two charged him with making a materially false statement to a bank in violation of 18 U.S.C. § 1014. See Record Document 35. On September 4, 2009, Corbell pleaded guilty to count two. See Record Document 43. Corbell was sentenced to eighteen months as to count two, followed by a three year term of supervised release on January 8, 2010. He was also ordered to pay restitution of $242,846. See Record Documents 48 and 49.

Corbell timely filed his appeal. See Record Document 50. In his appeal, Corbell asserted that the district court had used an unacceptable method of calculating the amount of loss and the amount of loss was not correct. On April 15, 2011, the United States Court of Appeals for the Fifth Circuit vacated Corbell's sentence and remanded for resentencing. See Record Document 58. On April 21, 2011, the district court resentenced Corbell to time served as to count two and released him

5

from custody to begin his supervised release term of three years. His restitution was adjusted to $198,183.82. See Record Document 62. Thereafter, Corbell filed the instant motion. See Record Document 63.

## II. LAW AND ANALYSIS

Corbell provides an exhibit which outlines his grounds for this motion. First, he believes that the method of calculating the amount of loss was not acceptable and the factual finding as to the amount was clearly an erroneous finding of fact. He also alleges the facts of the case and evidence provided offered no factual evidence that FLB suffered a loss. He also states that the FLB had "[n]o right to seek deficiency" and "[no] false statement." Record Document 63, Ex. 2. As a general rule, the review of a conviction pursuant to a section 2255 motion is limited to constitutional and jurisdictional questions. See United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998).

A.  **Issues Not Cognizable Under Section 2255.**

Technical application of the Sentencing Guidelines by a district court does not give rise to a constitutional issue. See Cervantes, 132 F.3d at 1109; United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). Such claims, therefore, are not cognizable in a section 2255 motion. See id. As a result, Corbell's challenge regarding the loss calculation cannot be considered by the court. This claim relates to the application of the Sentencing Guidelines in determining the defendant's offense

level.

**B.   Issue Previously Reviewed On Direct Appeal.**

Corbell also raised the guideline issue with respect to the loss calculation in his direct appeal which resulted in a sentence reduction. It is well settled that issues disposed of by a previous appeal cannot be properly raised in a section 2255 motion. See <u>Smith v. United States</u>, 265 F.2d 14, 16-17 (5th Cir. 1959); <u>United States v. Rocha</u>, 109 F.3d 225 (5th Cir. 1997); <u>Blackwell v. United States</u>, 429 F.2d 514 (5th Cir. 1970). Therefore this argument is also not cognizable and must be dismissed.

"Section 2255 does not reach errors not of a constitutional or jurisdictional magnitude that could have been reached by direct appeal." <u>United States v. Seyfert</u>, 67 F.3d 544, 546 (5th Cir. 1995). "Other types of error may not be raised under section 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal *and*, if condoned, would result in a complete miscarriage of justice." <u>Cervantes</u>, 132 F.3d at 1109 (emphasis in original). Corbell's claims are not constitutional or jurisdictional claims. Because Corbell has not demonstrated to the court that these alleged errors could not have been raised on appeal, they have been procedurally defaulted and must be dismissed.[1]

---

[1] Furthermore, many of the defendant's complaints are contradicted by the factual basis for Corbell's guilty plea, which was signed by Corbell, his attorney and the Assistant United States Attorney. The factual basis concluded by stating that "[a]ll facts above are agreed to as true and sufficient to support the charge of Making a False Statement to a Bank in violation of Title 18, United States Code,

## III. CONCLUSION

For the above cited reasons, Corbell's section 2255 motion (Record Document 63) is **DENIED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 5th day of December, 2012.



_____
JUDGE TOM STAGG

_____

Section 1014." Record Document 44.